HOGAN LOVELLS
CADWALADER

Hogan Lovells Cadwalader US LLP
200 Liberty Street
New York, NY 10281

T: +1 212 504 6000
F: +1 212 504 6666
www.hlc.com

November 4, 2026

By ECF Filing

The Honorable Mary Kay Vyskocil
United States District Court Judge
United States District Court, Southern District of New York
500 Pearl Street, New York, New York 10007

**Re: *California Regional Multiple Listing Service, Inc., et al. v. Compass, Inc.*, No. 1:26-cv-08796-MKV [related to No. 1:26-cv-09253-MKV] (S.D.N.Y.)**

Dear Judge Vyskocil:

Pursuant to Rule 4(A) of Your Honor's Individual Rules, Plaintiffs California Regional Multiple Listing Service, Inc. ("CRMLS") and OneKey® MLS LLC ("OneKey") (together, the "MLSs") respond to Defendant Compass, Inc.'s ("Compass") October 30, 2026 request for a pre-motion conference (ECF No. 16). The MLSs will avoid burdening the Court with repetitive argument and incorporate by reference the positions set forth in CRMLS's October 23, 2026 letter responding to Compass (ECF No. 12), which apply with equal force to Compass's renewed request. Here, the MLSs write principally to address the necessary predicate upon which Compass's new severance argument rests: that CRMLS and OneKey each "received its own demand letter." ECF No. 16 at 2.

## I. The September 8 Demand Letters Were Substantively Identical

On September 8, 2026, Compass's outside counsel sent CRMLS and OneKey letters bearing the same date, the same subject line—"Formal Legal Demand to Stop Fining/Punishing Agents for Public Marketing"—and the same demand. Am. Compl. Ex. A ("CRMLS Letter") at 1; Am. Compl. Ex. F ("OneKey Letter") at 1. Each letter required the recipient to provide "written confirmation to me by 5:00 PM ET on October 6, 2026," that it "will not fine or punish a real estate professional for publicly marketing office exclusive listings," or be "named as a defendant in a federal antitrust lawsuit," and each offered the same release in exchange. *Id.*

The two letters are nearly word-for-word identical, distinguished only by their recipient. Both advance the same argument under the same three headings, rely on the same authorities in footnotes 2 through 21, characterize the recipient's rule as "a horizontal agreement among competitors," and close with the same pledge that Compass "will spend millions of dollars to sue" the recipient "and other MLSs," the same document-preservation notice, and the same copies to the Department of Justice's Antitrust Division and the Federal Trade Commission's Bureau of Competition. CRMLS Letter at 2–5; OneKey Letter at 2–5. The only differences are the description of each MLS's fine schedule and the rulebook cited for it, and a clause describing each MLS's reply to an August 27 email from Compass's Chief Legal Officer. CRMLS Letter at 1, 5 n.1; OneKey Letter at 1, 5 n.1.

CRMLS and OneKey, however, were not the only recipients. Numerous other multiple listing services around the country, including the seven that have now filed a similar declaratory judgment action in this Court, received the same letter from Compass at around the same time, each demanding the same written confirmation by October 6 and warning that Compass "will spend millions of dollars to sue" the recipient "and other MLSs." *ARMLS et al. v. Compass, Inc.*, No. 1:26-cv-09253 (S.D.N.Y.),

Hogan Lovells Cadwalader US LLP is a limited liability partnership registered in the state of Delaware. "Hogan Lovells Cadwalader" is an international legal practice that includes Hogan Lovells Cadwalader US LLP and Hogan Lovells Cadwalader International LLP, with offices in: Alicante Amsterdam Baltimore Beijing Berlin Birmingham Boston Brussels Charlotte Colorado Springs Denver Dubai Dublin Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Munich New York Northern Virginia Paris Philadelphia Riyadh Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Tokyo Washington, D.C. Associated Offices: Jakarta Shanghai FTZ. Business Services Centers: Johannesburg Louisville. For more information see www.hlc.com.

ECF No. 28 ¶¶ 62–72 & Exs. K–Q. The seven other MLSs allege that CRMLS "received a substantively identical demand letter," *id.* ¶ 74.

## II. The Identical Letters Undercut Compass's Request to Sever and Transfer

Compass's alternative motion depends on treating the two letters as separate events. It argues that the claims "do not arise from the same transaction or occurrence" because each MLS "received its own demand letter," and that the factual questions differ because reasonableness "depends on the rule's terms, enforcement, and effects in a particular market." ECF No. 16 at 2. Compass's own letters refute both points. The MLSs may join claims arising out of the same "series of transactions or occurrences" that present a common question of law or fact. Fed. R. Civ. P. 20(a)(1). A single demand campaign—one company, one author, one date, one deadline, one template—is exactly that. Compass did not tailor its legal theory to either MLS's market—it warned each recipient that "MLSs are inherently vulnerable to antitrust claims because they are combinations of direct competitors," and that "MLS membership is not voluntary." CRMLS Letter at 1, 4; OneKey Letter at 1, 4. The question Compass posed to both MLSs *in identical terms*—whether an MLS may require that a publicly marketed listing be shared with the cooperative—is the question the MLSs ask this Court to resolve. Am. Compl. ¶¶ 6–7.

Compass's authority does not suggest otherwise. In *Kalie v. Bank of America Corp.*, 297 F.R.D. 552, 554 (S.D.N.Y. 2013), fifty-two borrowers sued sixteen different banks and loan servicers, each over a discrete mortgage transaction, and the court found "no common defect or misconduct." *Id.* at 558. *Kalie* distinguished cases like this one, in which plaintiffs sue "a single defendant" over a common alleged wrong and joinder is appropriate. *Id.* In this case, the MLSs face the same single defendant that sent each of them the same threat, in the same words, on the same day. Severing CRMLS's claims would require two courts to construe the same letter and adjudicate the same theory, and would risk inconsistent declarations, while the related *ARMLS* action—arising from the same demand—proceeds before this Court. That outcome would be antithetical to Rule 21's pursuit of judicial economy.

The remaining severance factors fare no better for Compass. *Wyndham Associates v. Bintliff*, on which Compass relies, permits severance to facilitate transfer only "where the administration of justice would be materially advanced by severance and transfer," and, of particular relevance here, where the severed party is "only indirectly connected" to the main subject matter—a safeguard against a plaintiff adding a party "peripherally involved in the alleged wrongdoing." 398 F.2d 614, 618–19 (2d Cir. 1968). OneKey is no peripheral party; it is a direct recipient of the same threat, seeking relief from the same campaign. And for the reasons set forth in CRMLS's October 23 letter, transfer would not advance the administration of justice. ECF No. 12 at 2–3. Under Compass's own test, the claims share common questions of law and fact: whether the same demand, built on the same theory, states a viable Section 1 claim. The state-law claims do not change the analysis because both California's Cartwright Act and New York's Donnelly Act track the Sherman Act. ECF No. 12 at 3. The witnesses and proof also overlap: the strategy and decision-makers behind both demand letters are the same Compass personnel in New York—the same executives who openly made the same threats during meetings and at the recent CMLS Conference. *Id.* Compass, a New York company, suffers no prejudice from litigating in its home forum, and splitting the case would require those witnesses to testify twice—again defeating the goal of judicial economy that Rule 21 promotes. *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 25–26 (S.D.N.Y. 2016), is not to the contrary. There, the severed plaintiff's claims were "already functionally proceeding as a separate case" while her co-plaintiffs' class claims moved toward settlement, and most of her allegations—retaliation, medical-leave, and defamation claims—were "unique to her alone." *Id.* Nothing comparable is true here.

The letters' uniformity also answers Compass's charge that OneKey's joinder is "procedural fencing in its plainest form." ECF No. 16 at 2. OneKey did not manufacture a New York nexus; Compass created it by sending a New York MLS the same threat it sent CRMLS, on the same day, as part of

the same campaign directed from Compass's New York headquarters. ECF No. 12 at 2–3. The controversy is a single one, and it belongs in a single forum. Nor are OneKey's claims an improper anticipatory filing. OneKey rejected Compass's demand and filed after Compass's deadline had passed, leaving OneKey exposed to the threatened suit with no recourse. ECF No. 16 at 1; Am. Compl. ¶¶ 17, 72. Like CRMLS, OneKey is the natural plaintiff to seek a declaration that its own rules are lawful. ECF No. 12 at 2. And OneKey's request for injunctive relief seeks no more than protection from the serial MLS litigation Compass has publicly promised. *Id.*

For these reasons and those set forth in CRMLS's October 23, 2026, letter, the MLSs respectfully request that the Court deny Compass's proposed motions to dismiss, to sever and transfer, and to stay.

Respectfully submitted,

*/s/ Claude G. Szyfer*
Claude G. Szyfer

*Counsel for California Regional Multiple Listing Service, Inc. and OneKey® MLS LLC*

**cc: Chambers (via VyskocilNYSDChambers@nysd.uscourts.gov)**
**Counsel of Record (via ECF)**